Case 7:17-cv-00398 Document 30 Filed on 09/18/18 in TXSD Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
September 19, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| LYNDON SOUTHERN INSURANCE CO., § § § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 7:17-CV-398 |
| § | |
| DANIEL MONCIVAIZ LOPEZ, § § | |
| Defendant. § | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT AND DENYING DEFENDANT'S MOTION TO DISMISS OR STAY

### I. Factual and Procedural Background

Now before the Court are Defendant Daniel Moncivaiz Lopez's ("Lopez") Motion to Dismiss or Stay (Dkt. No. 8) and Plaintiff Lyndon Southern Insurance Co.'s ("LSIC") Motion for Leave to Amend Complaint (Dkt. No. 21). On October 11, 2017, LSIC initiated this diversity case[1] by filing its "Complaint Seeking Declaratory Judgment," seeking to rescind and declare void ab initio a Texas personal automobile policy issued by LSIC to Lopez on May 25, 2015, on the grounds that Lopez omitted material facts and made material misrepresentations in his policy application regarding his true residency. (Dkt. No. 1 at ¶¶ 5-23, 37-56). LSIC also asserted causes of action for collusive settlement, late notice, and fraud on the court, all arising out of Lopez's actions after he secured the policy. (*Id.* at ¶¶ 24-36, 57-71). Specifically, LSIC alleged that Lopez "swapped" the insured vehicle for another, and after his involvement in an auto accident with Peggy and Clifford Pieper ("the Piepers") in Missouri while driving the swapped vehicle, failed to notify LSIC of the accident and the Piepers' subsequent lawsuit

---

[1] Lopez does not dispute that the Court has diversity jurisdiction over the action, in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States. *See* 28 U.S.C. § 1332(a)(1).

against him in Missouri state court, failed to cooperate with LSIC's agent after it received notice of a subrogation claim against it in the Piepers' lawsuit, and eventually entered into an agreement with the Piepers which was designed to "secure a substantial judgment for the Piepers," "exonerate [Lopez] of any personal liability," and "improperly influence the court in its findings with respect to coverage and liability," resulting in an uncontested $9 million judgment against Lopez on May 18, 2017. (*Id.*).

On December 29, 2017, Lopez filed the present Motion to Dismiss or Stay this case in favor of the Piepers' earlier filed equitable garnishment action against Lopez and LSIC in Missouri state court pursuant to Missouri Revised Statute § 379.200. (Dkt. No. 8 at § II).[2] Alternatively, Lopez asks to dismiss the case for failure to join the Piepers, characterized as necessary parties whose joinder is not feasible, under Federal Rule of Civil Procedure 19(b). (*Id.* at § III). Also in the alternative, Lopez requests dismissal of the collusive settlement and fraud on the court causes of action under Rule 12(b)(6), in part on the basis that the challenged agreement resulting in the state-court judgment was a contract authorized by Missouri Revised Statute § 537.065. (*Id.* at § IV).

After consideration of the Motion, Lopez's exhibits (Dkt. Nos. 10, 14), and the parties' responsive briefing (Dkt. Nos. 11, 14, 18) and arguments at the initial pretrial and scheduling conference on February 7, 2018, the Court requested "submission of a copy of the contract entered into under [Missouri Revised Statute] § 537.065 between [the Piepers and Lopez], in order to better ascertain the extent to which the Piepers are assignees/owners of [Lopez's] rights under the policy at issue here, and whether they are the proper parties and/or indispensable parties to [LSIC]'s requests for rescission and to void the policy." (02/07/2018 Minute Entry). The Court's minute entry also set forth a deadline within which to submit briefing on these

---

[2] Lopez later supplemented the Motion with the exhibits referenced therein. (Dkt. No. 10).

issues. (*Id.*). Lopez submitted a copy of the contract (also referred to herein as "§ 537.065 agreement"), and on the same date the parties filed briefing addressing that agreement, LSIC filed the instant Motion for Leave to Amend its Complaint "to remove the allegations pertaining to the § 537.065 agreement"—namely, LSIC's collusive settlement, late notice, and fraud on the court allegations and causes of action. (Dkt. Nos. 20-22, 24). With leave of Court, LSIC later supplemented its briefing to respond to the arguments made by Lopez. (Dkt. Nos. 26, 27). To date, Lopez has not responded to the Motion for Leave to Amend.

Upon consideration of the Motions and the exhibits and arguments responsive to the Motion to Dismiss or Stay and to the Court's Minute Entry, the Court finds that the Motion for Leave to Amend must be granted and the Motion to Stay or Dismiss must be denied for the following reasons.

## II. Analysis

### A. LSIC's Motion for Leave to Amend Complaint

As LSIC's Motion for Leave is deemed unopposed due to Lopez's failure to respond to the Motion, and no factors warranting the denial of leave are apparent, the Court finds that the Motion should be granted and LSIC allowed to amend its Complaint to omit the collusive settlement, late notice, and fraud on the court allegations and causes of action. *See* Local Rules 7.3, 7.4.; FED. R. CIV. P. 15(a)(2) (court "should freely give leave [to amend] when justice so requires"); *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (in exercising its discretion under Rule 15(a), court may consider factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party…, and futility of the amendment").

Accordingly, the Court will consider Lopez's Motion to Dismiss or Stay as it relates to LSIC's First Amended Complaint (Dkt. No. 21-2).

**B.     Lopez's Motion to Dismiss or Stay**

To the extent that the Motion to Dismiss or Stay requests dismissal of LSIC's collusive settlement and fraud on the court causes of action under Rule 12(b)(6), that request is mooted by the omission of such claims from LSIC's First Amended Complaint. *See* (Dkt. No. 8 at § IV; Dkt. No. 21-2). Therefore, in determining the Motion, the Court need only consider: (1) whether dismissal or stay of the action, as amended, is warranted under federal abstention principles in light of the Piepers' earlier filed equitable garnishment action; and (2) whether Lopez's failure to join the Piepers to this suit requires dismissal. *See* (Dkt. No. 8 at §§ II, III).

**1.     First Issue: Whether Dismissal or Stay Is Warranted under Federal Abstention Principles**

**a.     Overview of Evidence and Arguments**

At the Court's request, Lopez provided evidence that in April 2017, the Piepers and Lopez entered into a "Contract to Limit Recovery Pursuant to Missouri Revised Statute 537.060,"[3] in which the parties acknowledged that the Piepers "were seriously injured in a motor

---

[3] At the time, § 537.065 provided in relevant part as follows:

> Any person having an unliquidated claim for damages against a tort-feasor, on account of bodily injuries…may enter into a contract with such tort-feasor…whereby, in consideration of the payment of a specified amount, the person asserting the claim agrees that in the event of a judgment against the tort-feasor, neither he nor any person, firm or corporation claiming by or through him will levy execution, by garnishment or as otherwise provided by law, except against the specific assets listed in the contract and except against any insurer which insures the legal liability of the tort-feasor for such damage and which insurer is not excepted from execution, garnishment or other legal procedure by such contract. Execution or garnishment proceedings in aid thereof shall lie only as to assets of the tort-feasor specifically mentioned in the contract or the insurer or insurers not excluded in such contract. …[I]f the [contract] is [properly] recorded then such tort-feasor's property, except as to the assets specifically listed in the contract, shall not be subject to any judgment lien as the result of any judgment rendered against the tort-feasor, arising out of the transaction for which the contract is entered into.

vehicle collision involving [Lopez]" on June 24, 2015 in Christian County, Missouri, that the Piepers had filed a lawsuit against Lopez in the Circuit Court of Christian County for personal injuries and damages caused by the collision, that at the time of the collision Lopez was driving a vehicle insured by LSIC, and that LSIC had denied coverage and a defense to Lopez in the lawsuit. (Dkt. No. 20-1 at p. 1). In light of LSIC's "refusal to protect, defend or indemnify" Lopez, the parties agreed to a streamlined bench trial on issues of liability and damages. (*Id.* at pp. 2-3). Further, the Piepers agreed to "look first to satisfy any judgment from any proceeds of a claim or claims against [LSIC] and its agents, employees and attorneys for coverage or bad faith and/or negligence in failing to provide coverage and defend [Lopez]," and that they would "not execute on any…judgment that is rendered in the aforementioned lawsuit against any personal assets of [Lopez] until and unless the proceedings against [LSIC] is (sic) concluded and no monies are recovered from [LSIC]." (*Id.*). In turn, Lopez agreed to pursue claims against LSIC arising out of its alleged failure to afford coverage, and "[a]fter satisfying his attorney's lien and expenses and recovery of his own reasonable expenses," "to hold and tender the remaining proceeds first to satisfy any judgment that may be entered[.]" (*Id.* at pp. 4-5).

In support of the Motion, Lopez presents additional evidence that on May 18, 2017, following a bench trial and the presentation of evidence by the Piepers and Lopez, the state court entered a judgment that as a result of Lopez's negligence in running a stop sign and causing the collision, Peggy Pieper sustained personal injury damages in the amount of $8,173,369.30 and Clifford Pieper sustained consortium damages in the amount of $900,000, and that the Piepers recover these sums, plus post-judgment interest and costs, from Lopez. (Dkt. No. 14, Exh. 3). After obtaining the judgment, on June 20, 2017, the Piepers filed suit against LSIC and Lopez in

---

Mo. Rev. Stat. § 537.065.

the Circuit Court of Christian County pursuant to Missouri Revised Statute § 379.200, which provides in relevant part as follows:

> Upon the recovery of a final judgment against any person…by any person, for loss or damage on account of bodily injury…or damage to property if the defendant in such action was insured against said loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money, provided for in the contract of insurance between the insurance company…and the defendant, applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment[.]

MO. REV. STAT. § 379.200.  The Piepers' petition alleges that their negligence claims for personal injuries and damages arising from the accident with Lopez, and resulting in the judgment against him, were covered claims under his policy of insurance with LSIC, and that more than 30 days had elapsed since the entry of judgment without payment from LSIC of the "portion of the judgment insured." (Dkt. No. 10, Exh. A).  Therefore, pursuant to § 379.200, the Piepers assert an equitable garnishment cause of action against LSIC and Lopez for payment of that portion.  (*Id.*).  Lopez filed crossclaims against LSIC for insurance bad faith, negligent claims handling, breach of fiduciary duty, and breach of contract, and LSIC in its answer to the Piepers' petition and Lopez's crossclaims asserts as defenses the same claims it asserts affirmatively in this case.  (*Id.*, Exhs. B, G; Dkt. No. 14, Exhs. 1, 2).  Lopez presents additional evidence that the discovery process was ongoing in state court as of the date of the filing of the Motion, with LSIC having filed objections to Lopez's first interrogatories and requests for production which the parties were attempting to resolve, and with Lopez having noticed LSIC's corporate representative for deposition on January 19, 2018.  (Dkt. No. 10, Exhs. C-F).

On the basis of the evidence offered in support of the Motion, Lopez takes the position that the equitable garnishment action "will determine whether there is coverage under the

policy," and that federal abstention principles applicable to declaratory judgment actions warrant a stay or dismissal of the later-filed action pending here "in favor of the resolution of the same claims in the Court which first acquired jurisdiction, and [in] which all of the necessary parties are present." (Dkt. No. 8 at ¶ 2). LSIC responds that since it also seeks "coercive" relief in the form of rescission, the applicable federal abstention doctrine is the one set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and that the factors to be considered by the Court in applying this doctrine weigh against a stay or dismissal. (Dkt. Nos. 11, 18; *see also* Dkt. No. 22). Lopez disputes application of the *Colorado River* abstention doctrine, but argues that even if it governs, its factors weigh in favor of abstention. (Dkt. No. 14).

b.  *Colorado River* **Abstention Doctrine Applies**

It is well-established in this Circuit that although a "purely" declaratory action affords a district court broad discretion to defer to a parallel state proceeding, under the standard derived from *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942), an action that includes both declaratory and "coercive" claims for relief requires application of the standard set forth in *Colorado River*, under which the court's discretion to abstain is "narrowly circumscribed" and governed by a broader "exceptional circumstances" standard. *New England Ins. Co. v. Barnett*, 561 F.3d 392, 394-96 (5th Cir. 2009); *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 797 n. 29 (5th Cir. 2014) (quoting *Barnett*, 561 F.3d at 394-95).[4] In discussing contrasting approaches to the issue of "which standard applies when a request for declaratory judgment action seeks both declaratory and coercive relief," *Barnett* cited to the Ninth Circuit's characterization of rescission (among other claims) as a claim "other" than one

---

[4] *Barnett* noted two exceptions to this rule: "if the claims for coercive relief are frivolous or…were added as a means of defeating *Brillhart*," but Lopez does not appeal to these exceptions, nor is it apparent that the exceptions apply. *Barnett*, 561 F.3d at 395-96.

for declaratory relief, and district courts have interpreted this reference as including rescission among those "coercive" claims that trigger application of *Colorado River* under the Fifth Circuit's approach—that is, in cases also involving requests for declaratory relief. *Barnett*, 561 F.3d at 395 (citing *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1112-13 (9th Cir. 2001); *Snodgrass v. Provident Life & Accident Ins. Co.*, 147 F.3d 1163, 1167-68 (9th Cir. 1998)); *see Ma. Mut. Life Ins. Co. v. Loew*, 2018 WL 2085212, at *2 (W.D. Tex. Mar. 27, 2018), *report and recommendation adopted*, 2018 WL 3603101 (W.D. Tex. May 16, 2018) (in *Barnett*, Fifth Circuit "described" following claims as coercive: bad faith, breach of contract, breach of fiduciary duty, rescission, and any claim involving monetary or injunctive relief); *Lincoln Nat'l Life Ins. Co. v. Cowboy Athletics, Inc.*, 2010 WL 11463984, at *6 (N.D. Tex. June 16, 2010) (same); *Crum & Forster Specialty Ins. Co. v. Explo Sys. Inc.*, No. CIV.A. 12-3080, 2013 WL 1869099, at *2 (W.D. La. May 2, 2013) (same, and also including claim for attorney's fees in list); *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 2010 WL 278877, at *2 (E.D. Tex. Jan. 20, 2010) (same, and also noting that "[i]t appears, based on this list, the Fifth Circuit is using the term 'coercive' to describe any non-declaratory claims for relief, even those, like contract rescission, that do not technically 'coerce' any action from the parties"). In cases pre-dating *Barnett*, other district courts have applied *Colorado River* in actions seeking both coverage declarations and policy rescission. *See Westport Ins. Corp. v. Ross Mancuso*, 2002 WL 221615, at *1 (E.D. La. Feb. 7, 2002) (applying *Colorado River* where "the plaintiff seeks rescission of the policy in addition to a declaration that the claims in the underlying suit are not covered"); *Coregis Ins. Co. v. Bell*, 1997 WL 567959, at *2 (E.D. La. Sept. 12, 1997) (applying *Colorado River* where case "primarily involves rescission" and "is not simply a suit for declaration of coverage"). On this basis of this authority, LSIC takes the position that its

inclusion of a coercive claim requires the Court to apply the stricter *Colorado River* standard, rather than *Brillhart*, in determining whether to abstain. (Dkt. No. 11 at pp. 2-3).

Lopez counters that rescission was not among the coercive claims directly at issue in *Barnett* or any of the Fifth Circuit cases cited therein, and that since all of these decisions involved claims for monetary damages and/or requests for an injunction, LSIC does not seek "traditional" coercive relief. (Dkt. No. 14 at pp. 2-3). However, as LSIC observes, Lopez has failed to identify any authority holding that a claim for rescission is not coercive or otherwise distinct from declaratory relief. (Dkt. No. 18 at pp. 1-2). Under Texas law,[5] rather than simply declare the rights of the parties under a contract, relief in the form of rescission extinguishes those rights, requires the return of any consideration paid, and restores the parties to their respective positions "as if no contract between them had ever existed." *Ginn v. NCI Bldg. Sys., Inc.*, 472 S.W.3d 802, 837 (Tex. App.-Houston [1st Dist.] 2015, no pet.); *compare with* 28 U.S.C. § 2201 (allowing court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought"); *see Lawyers Title Ins. Corp.*, 2010 WL 278877, at *2 ("A non-declaratory claim for relief is any action that could actually change the rights of the parties, instead of merely declaring what they are."). Therefore, the Court is satisfied that LSIC seeks relief that requires application of *Colorado River* to Lopez's request for abstention.[6]

---

[5] In diversity cases like the present one, federal courts apply the substantive law of the forum state and federal procedural law. *E.g.*, *Roseberg v. Celotex Corp.*, 767 F.2d 197, 199 (5th Cir. 1985).

[6] Although LSIC does not raise this point, the Court further notes that in *Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948 (5th Cir. 1994), a case cited by *Barnett* and Lopez, the Fifth Circuit characterized attorney's fees as a coercive remedy, and that LSIC also seeks this remedy. *See Bergen*, 23 F.3d at 951; *Barnett*, 561 F.3d at 395; (Dkt. No. 14 at p. 2; Dkt. No. 21-2 at § VII).

### c.  Abstention Is Not Warranted

Under *Colorado River*, a court may abstain from a case that is parallel[7] to a state proceeding only under "exceptional circumstances."  *Brown*, 462 F.3d at 394-95; *see Colo. River*, 424 U.S. at 813, 817 (abstention doctrine represents an "extraordinary and narrow exception" to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them").  To determine whether such circumstances exist, the court considers the following six factors: (1) assumption by either court over a res; (2) relative inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent fora; (5) extent to which federal law provides the rules of decision on the merits; and (6) adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.  *Brown*, 462 F.3d at 395 (citing *Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 491 (5th Cir. 2006); *Colo. River*, 424 U.S. at 818; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 (1983)).  The decision whether to stay or dismiss the federal proceeding "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."  *Id.* (quoting *Moses H. Cone*, 460 U.S. at 16).  For the following reasons, the Court finds that a balancing of the relevant factors fails to shift that weight.

### i.  Res at Issue

Where, as here, neither court has assumed jurisdiction over any res, this factor weighs

---

[7] While the equitable garnishment action involves additional parties, the Piepers, and crossclaims brought by Lopez that he has not asserted here, LSIC's requests for affirmative relief in the form of rescission and a declaration that the policy is void ab initio are asserted as defenses to Lopez's crossclaims, and in this sense the federal and state actions are sufficiently "parallel" to invoke *Colorado River*. *See Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 395 n.7 (5th Cir. 2006) (quoting *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 540 (5th Cir. 2002)) (suits are "parallel" if they involve the same parties and issues, although "it may be that there need not be applied in every instance a mincing insistence on precise identity" of the same).  Moreover, even if they are not, the Court otherwise finds that abstention is not warranted for the reasons discussed *infra*.

against abstention and in favor of the exercise of federal jurisdiction.  *See Stewart*, 438 F.3d at 492.

ii.     **Relative Inconvenience of the Fora**

As LSIC's action in this Court no longer seeks affirmative relief directly related to the § 537.065 agreement between Lopez and the Piepers or the judgment rendered by the Missouri state court, Lopez's arguments that a Texas forum would inconvenience "numerous" Missouri parties and witnesses—namely, the Piepers, the Piepers' and Lopez's counsel, and the presiding judge—are no longer relevant.  *See* (Dkt. No. 14 at pp. 3-4).  Presently, at issue in both suits are LSIC's allegations that in procuring the policy from its agent in Texas, which agent had "no authority to…underwrite LSIC automobile liability policies for residents of states other than Texas or where a car will be garaged in a state other than Texas," Lopez used a Texas driver's license and represented that he was living in McAllen, when in reality he had left his temporary Texas oilfield work to return to his residence in Missouri and had multiple forms of identification: a Missouri driver's license that he had produced weeks before as his valid form of identification during a traffic stop in Missouri, the Texas driver's license that he used to procure the policy, and a more recent Texas driver's license that had been reissued to him after he claimed that he lost the former.  *See* (Dkt. No. 14, Exh. 2; Dkt. No. 21-2 at § IV).  Since the alleged misrepresentations and omissions underlying LSIC's requests to rescind the policy and declare it void ab initio occurred in Texas, and Lopez has not claimed that the evidence and witnesses relevant to these allegations predominate in Missouri, the Court finds that this factor weighs against abstention.

### iii. Avoidance of Piecemeal Litigation

In examining this factor, the Fifth Circuit has explained that

"[t]he prevention of duplicative litigation is not a factor to be considered in an abstention determination." *Duplicative* litigation, wasteful though it may be, is a necessary cost of our nation's maintenance of two separate and distinct judicial systems possessed of frequently overlapping jurisdiction. The real concern at the heart of the third *Colorado River* factor is the avoidance of *piecemeal* litigation, and the concomitant danger of inconsistent rulings with respect to a piece of property.

*Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650-51 (5th Cir. 2006) (quoting *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1192 (5th Cir. 1988)) (emphasis in original). LSIC contends that here, as in *Black Sea*, "[w]hen…no court has assumed jurisdiction over a disputed res, there is no such danger" and this factor weighs against abstention. *Id.* at 651; (Dkt. No. 11 at p. 6). Lopez does not engage this precedent, instead appealing to Missouri case law to argue that adjudication of LSIC's federal case "will have no effect on the Missouri litigation, as the Piepers are not parties and res judicata will not apply," and therefore the risk of piecemeal litigation is "very real." (Dkt. No. 14 at p. 4) (citing *Wilkes v. St. Paul Fire & Marine Ins. Co.*, 92 S.W.3d 116 (Mo. Ct. App. 2002)). *Wilkes* addressed the collateral estoppel effect of a federal court's declaration of no coverage on a Missouri equitable garnishment action, and ultimately held that principles of collateral estoppel did not preclude the state-court plaintiffs, as nonparties to the federal action, from relitigating the coverage issue. *Wilkes*, 92 S.W.3d at 120-23. However, the court's holding turned on its observation that the § 537.065 agreement between the plaintiffs and the insured limited any recovery to insurance proceeds and absolved the insured of personal liability, in which case the court questioned whether the plaintiffs were sufficiently "in privity" with the insured and ultimately determined that they did not have a "full and fair opportunity" to litigate the coverage issue in the federal case. *Id.* In so holding, *Wilkes* distinguished two Missouri Supreme Court decisions in which privity was found to exist: *James*

12 / 19

*v. Paul*, 49 S.W.3d 678 (Mo. 2001), in part on the basis that the § 537.065 agreement at issue there required additional payment by the insured should the equitable garnishment action prove unsuccessful, and *State Farm Mutual Automobile Insurance Company v. Allen*, 744 S.W.2d 782 (Mo. 1988), given that the insurer in that case brought its declaratory judgment action against "all known claimants" under the policy and "[t]he issue of privity arose in relation to the admission of evidence." *Wilkes*, 92 S.W.3d at 121-22; *see James*, 49 S.W.3d at 681, 683-84, 689; *Allen*, 744 S.W.2d at 786; (Dkt. No. 22 at pp. 6-8).

Under the terms of the § 537.065 agreement at issue here, Lopez faces execution on his personal assets if "no monies are recovered" from LSIC; therefore, the Court agrees with LSIC that the *Wilkes* court's above-cited distinguishing of *James* does not extend to the present case, suggesting that the requisite privity exists. *See James*, 49 S.W.3d at 683-84 (judgment creditor whose equitable garnishment claim was derivative of insured's contractual rights was in privity with insured); (Dkt. No. 22 at pp. 6-7). Also in light of these terms, Lopez has an interest at least equal to the Piepers' in defending against the federal action, indicating that his presence in this action—especially when coupled with the Piepers' ability to intervene—affords the Piepers a full and fair opportunity to do so.[8] The Court also agrees with LSIC that *Allen* is more closely analogous to the case at hand than it was to *Wilkes*, in that LSIC seeks to rescind and void Lopez's policy as to any claimant under that policy. *See* (*id.* at p. 7). Therefore, *Allen* provides further indication that under Missouri law, the Piepers are in privity with Lopez. *See Allen*, 744 S.W.2d at 786 (evidence admissible against insured also admissible against "all known claimants" whose rights against insurer were based solely on insured's policy, and who were in

---

[8] To the extent that *Wilkes* considered the plaintiffs' failure to intervene irrelevant to the ultimate "fairness" analysis, it apparently did so because the insurer could have sought joinder of the plaintiffs under Rule 19 but chose not to do so, whereas here the parties admit that joinder is not feasible because the Court lacks personal jurisdiction over the Piepers. *See Wilkes*, 92 S.W.3d at 119, 122-23; (Dkt. No. 22 at p. 8).

privity with insured). Since no party disputes that principles of res judicata would apply to bind LSIC and Lopez, as parties to both actions, on the issue of whether coverage exists for any claimant under the policy, the Court concludes that the proceedings do not present a clear danger of inconsistent rulings. *See Kelly Inv., Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 498-99 (5th Cir. 2002) (where possibility of inconsistent judgments can be obviated through plea of res judicata, no risk of piecemeal litigation). Accordingly, this factor weighs against abstention. *Black Sea Inv.*, 204 F.3d at 651.

iv. **Order in Which Jurisdiction Was Obtained**

Precedent directs that this factor "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Id.* (quoting *Moses H. Cone*, 460 U.S. at 21). Although, as Lopez emphasizes, discovery was underway in the state-court action at the time he filed the Motion, his evidence demonstrates that the process was in its initial stage. (Dkt. No. 14 at p. 5). Given that this Court entered its Scheduling Order a little over a month later, and discovery taken in the state-court proceeding is also relevant here, at most this factor weighs only slightly in favor of abstention. *See* (Dkt. No. 16); *Bank One, N.A. v. Boyd*, 288 F.3d 181, 186 (5th Cir. 2002) (although state-court action was filed first in time, "its progress relative to the federal suit calls into question the weight attributed to this factor").

v. **Extent to Which Federal Law Applies**

This case does not require application of federal law, but the presence of purely state law issues in a diversity case "weighs in favor of surrender [of jurisdiction] only in rare circumstances." *Stewart*, 438 F.3d at 493 (quoting *Black Sea Inv.*, 204 F.3d at 651). Although Lopez's reply argued that LSIC's request to declare fraudulent an agreement authorized by and

entered into pursuant to Missouri law brought this case within those circumstances, LSIC's omission of the collusive settlement and fraud on the court causes of action from its amended pleading renders that argument moot, and this factor neutral.  *See* (Dkt. No. 14 at p. 5); *id.*

vi.     **Adequacy of State Proceedings**

Since LSIC "does not suggest that the Circuit Court of Christian County, Missouri is incapable of interpreting Texas insurance law or providing adequate relief for its claims," this factor is neutral.  (Dkt. No. 11 at p. 8); *Evanston*, 844 F.2d at 1193 ("[I]t is clear from its nature that [this factor] can only be a neutral factor or one that weighs against, not for, abstention.").

vii.    **Conclusion**

Upon consideration of all of the factors, only one of which weighs slightly in favor of abstention, the Court finds that the requisite "exceptional circumstances" warranting the Court's surrender of its federal diversity jurisdiction do not exist in the present case.  Therefore, the Court must deny Lopez's Motion to the extent that it seeks a stay or dismissal of this action under federal abstention principles.

2.      **Second Issue: Whether Dismissal Is Warranted for Failure to Join the Piepers**

a.      **Overview of Arguments**

In the alternative, Lopez asks to dismiss this action for failure to join the Piepers as necessary parties under Rule 19(b).  (Dkt. No. 8 at § III); *see* FED. R. CIV. P. 12(b)(7) (allowing for dismissal on this basis).  Specifically, the subsection of Rule 19 to which Lopez appeals states that "*[i]f a person who is required to be joined if feasible cannot be joined*, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed," and sets forth factors for the court to consider in making this determination.  FED. R. CIV. P. 19(b) (emphasis added).  In response, LSIC takes issue with

Lopez's assumption that any such joinder is *required* under Rule 19(a),[9] which provides as follows:

> (a) Persons Required to Be Joined if Feasible.
>
>> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>>
>>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>>>
>>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>>
>>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>>>
>>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a); (Dkt. No. 11 at p. 9). Although LSIC admits that the Piepers' presence in this suit would not deprive the Court of diversity jurisdiction, it otherwise disputes application of Rule 19(a)(1)(A) and (a)(1)(B) in this case. (Dkt. No. 11 at pp. 9-11).

**b.    The Piepers Are Not Necessary Parties under Rule 19(a)**

**i.    Rule 19(a)(1)(A)**

As amended, LSIC's affirmative claims seek only to rescind and void its policy with Lopez on the basis of the latter's alleged material omissions and misrepresentations at the time he applied for the policy. Therefore, the Court agrees with LSIC that it can accord complete relief among the existing parties to this action, *i.e.*, the parties to that contract. *See* (Dkt. No. 18 at p. 5; Dkt. No. 22 at p. 3).

---

[9] The parties do not dispute that the Piepers' joinder is not feasible because the Court lacks personal jurisdiction over them.

ii. Rule 19(a)(1)(B)

In taking the position that the Piepers are necessary parties under Rule 19(a)(1)(B), Lopez relies in large part on the Fifth Circuit's decision in *Ranger Insurance Company v. United Housing of New Mexico*, 488 F.2d 682 (5th Cir. 1974), a diversity case and "declaratory judgment action brought by the…insurer seeking to establish that, under the coverage provisions of its insurance contract with the [insureds], it [was] not liable for claims arising from a fatal crash of the insureds' plane." *Ranger*, 488 F.2d at 682-83; *see* (Dkt. No. 8 at pp. 14-15; Dkt. No. 14 at pp. 6-8; Dkt. No. 24 at pp. 1-4). Subsequent to the district court's dismissal of that action for failure to join the non-diverse claimants seeking damages against the insureds in a separate case, judgment was rendered on behalf of the claimants against one of the insureds. *Ranger*, 488 F.2d at 683 n.2. Although the bulk of the *Ranger* opinion concerned the court's consideration of the factors set forth in Rule 19(b), the Fifth Circuit also reasoned that the absent claimants' interests would be sufficiently prejudiced as contemplated by Rule 19(a)(1)(B)(i) because "they would have to contend with the *stare decisis* effect of…a judgment [in the insurer's favor], or they might be forced to litigate its effect on the direct action clause" of the policy. *Id.* at 683 n.3, 683. As LSIC points out, the Fifth Circuit has since distinguished *Ranger*, explaining that although that decision "determined that insurance plaintiffs *may* fall under [Rule 19(a)(1)(B)(i)]," "[t]here, the plaintiffs could not intervene in the federal action because their presence would divest the court of diversity jurisdiction." *Fed. Ins. Co. v. Singing River Health Sys.*, 850 F.3d 187, 201 (5th Cir. 2017) (emphasis added); (Dkt. No. 11 at p. 10). In *Singing River*, the plaintiffs had the ability to intervene because they were diverse in citizenship from the insurer, and therefore they had "the means to protect their interest." *Singing River*, 850 F.3d at 201. Moreover, the court found that the plaintiffs had "the same interest as [the insureds]—maximizing coverage," and

thus their interests were "protected by [the insureds'] vigorous litigation in the coverage dispute." *Id.*

When applied to the record in this case, the Court finds this reasoning dispositive of whether the Piepers' joinder is required under Rule 19(a)(1)(B)(i).[10] Here, as in *Singing River*, the Piepers are diverse in citizenship and have the means to intervene in the present action without destroying the Court's subject-matter jurisdiction. Further, the Court agrees with LSIC that the § 537.065 agreement at issue in this case establishes that Lopez has an interest at least equal to the Piepers' in defending against LSIC's effort to rescind and void the policy, in that he is "both contractually obligated and motivated to pursue litigation against LSIC for his own benefit and to satisfy the Piepers' judgment, lest they look to his personal assets." (Dkt. No. 22 at p. 3).[11] Under these circumstances, the Piepers are not so situated that disposing of this action would, as a practical matter, prejudice their ability to protect their interest in satisfying the judgment against Lopez. Therefore, they are not required parties within the meaning of subsection (i).

Neither does the Piepers' absence leave LSIC or Lopez at risk of incurring inconsistent obligations as contemplated under Rule 19(a)(1)(B)(ii). As LSIC points out, Lopez's obligations to the Piepers are already established by the § 537.065 agreement and judgment, such that "the only unknown is whether his action against LSIC, rather than his personal assets, will satisfy their judgment." (Dkt. No. 22 at p. 5). Further, for the reasons explained in the Court's analysis of the third *Colorado River* factor, the Court rejects Lopez's argument that a judgment in this

---

[10] Lopez's attempt to argue otherwise is unavailing, as he relies on separate portions of the *Singing River* decision not relevant to this determination. *See* (Dkt. No. 14 at p. 7).

[11] Although Lopez's briefing filed on February 28, 2018 alleges that he and the Piepers "are in the process of negotiating…an amendment to the [§ 537.065] Agreement that will more formally assign rights to the Piepers and unquestionably make them necessary and indispensable parties," to the Court's knowledge no such amendment has occurred, nor is it readily apparent that any such assignment would make the Piepers necessary parties. (Dkt. No. 24 at pp. 3-4; *see* Dkt. No. 27).

case would not be binding on the Piepers in the state-court action, and therefore any suggestion that LSIC faces substantial risk of incurring inconsistent obligations. Rather, the single Missouri case cited by Lopez, and the authority cited therein, indicate that principles of collateral estoppel obviate that risk.

    iii.    **Since the Piepers' Joinder is Not Required under Rule 19(a), Dismissal Is Not Warranted under Rule 19(b)**

For all of these reasons, the Court concludes that the Piepers are not parties whose joinder is required under Rule 19(a). Therefore, the Court need not consider whether equity requires dismissal under Rule 19(b), and must deny Lopez's alternative request to dismiss on this basis. *See Temple v. Synthes Corp.*, 498 U.S. 5, 8 (1990) (where threshold requirements of Rule 19(a) have not been satisfied, no inquiry under Rule 19(b) is necessary).

**III.**    **Conclusion**

For the foregoing reasons, the Court hereby **ORDERS** that LSIC's Motion for Leave to Amend Complaint (Dkt. No. 21) is **GRANTED** and the Clerk shall file the First Amended Complaint attached as an exhibit to the Motion; and Lopez's Motion to Dismiss or Stay (Dkt. No. 8) is **DENIED**.

SO ORDERED this 18th day of September, 2018, at McAllen, Texas.

                                                    _____
                                                    Randy Crane
                                                    United States District Judge